**ACTION ORTHOPEDICS,
INC., Plaintiff,**

**v.**

**TECHMEDICA, INC., et al., Defendants.**

**No. 89–1180–CIV–T–17(B).**

United States District Court,
M.D. Florida,
Tampa Division.

March 11, 1991.

R. Nathan Hightower, McMullen, Everett, Logan, Marquardt & Cline, P.A., Clearwater, Fla., and H. Francis DeLone, Jr., Mitchell A. Kramer, Melissa Lang, Philadelphia, Pa., for plaintiff.

Peter J. Grilli, Alpert, Josey & Grilli, P.A., Tampa, Fla., for defendants.

## ORDER ON MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause is before the Court on Defendants' motion to dismiss filed August 15, 1990, and response thereto filed August 29, 1990.

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). A trial court, in ruling on a motion to dismiss, is required to view the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1947).

The complaint in this case was filed August 25, 1989, and contained the following counts: 1) breach of contract against Defendant Techmedica, Inc.; 2) breach of covenant of good faith and fair dealing against Defendant Techmedica, Inc.; and, 3) interference with business relationships against all defendants. As to Count III, Plaintiff seeks exemplary and punitive damages and reasonable attorney fees.

Defendants urge this Court to enter an order dismissing this action for lack of subject matter jurisdiction because the amount in controversy does not meet the requisite for federal jurisdiction. Plaintiff, not surprisingly, disputes Defendants' position. Plaintiff maintains that its complaint

in good faith alleged the requisite amount in controversy.

Defendants put forth the following three arguments in support of their motion: 1) The amount in controversy is less than $50,000; 2) The amount in controversy is less than $50,000 irrespective of the contract's liquidated damages provision, and; 3) Plaintiff's attorney fees cannot be included in determining the amount in controversy.

In contrast, the Plaintiff responds to the Defendants' arguments in the following fashion: 1) Plaintiff's damages for Defendant Techmedica's breach of contract exceed the jurisdictional amount; 2) Plaintiff's damages resulting from Defendants' interference with Plaintiff's business relationships likewise meet the jurisdictional amount, and; 3) Plaintiff's claims for attorneys' fees should be included in determining the amount in controversy.

## FINDINGS OF FACT

1. Plaintiff, Action Orthopedics, Inc., (hereinafter "AOI") entered into a contract with Techmedica, Inc. whereby AOI was the exclusive distributor of Techmedica's custom orthopedic prostheses and related products in an exclusive territory. The agreement had a term of five (5) years. The exclusive territory consisted of a portion of the state of Florida.

2. On June 22, 1989, Techmedica notified AOI that the contractual relationship between the parties would terminate within thirty days for cause. Techmedica's position was that AOI had displayed poor sales performance, failed to meet sales goals and failed to pay Techmedica's bills.

3. AOI sued for breach of contract, interference with business relationships, interference with contractual relationships between AOI and its employees, and other alleged improper conduct by Techmedica and two of its employees.

4. AOI's complaint seeks damages from Techmedica in the amount of AOI's expected earnings over the life of the contract, less normal operating expenses, and for the diminution in the value of its business, plus interest.

5. Additionally, AOI's complaint seeks damages from all defendants for the alleged torts. The complaint also seeks a plethora of costs and fees relating to this action.

## DISCUSSION

While conceding that the parties are "diverse", Defendants contend that Plaintiff cannot support its jurisdictional allegation by competent proof. Defendants assert that as a matter of law, the matter in controversy does not exceed $50,000, exclusive of interest and costs.

Defendants advance three arguments in support of their position. First, Defendants argue that the distribution agreement, by use of a liquidated damages provision, limits Plaintiff's recovery to a legal certainty—at a level well below the jurisdictional limits of this Court. While Defendants do not specify, it is apparent that their argument is aimed at Count I and II of the complaint (the "contract counts"). This Court agrees that the damages recoverable under the contract are not sufficient to confer jurisdiction.

While damages recoverable under the contract counts fall short of the jurisdictional limits of this Court, that alone is not fatal to Plaintiff's action. To that end, Defendants contend that Plaintiff cannot avoid contractual liability by suing in tort (Count III).

Second, Defendants argue that irrespective of the liquidated damages provision, the law governing contracts terminable at-will precludes jurisdiction by this Court. While Defendants' argument is well received, the Court does not find the argument dispositive.

This Court will examine jurisdiction and attempt to clarify the legal issues involved in this matter by first examining Plaintiff's contract claims, then the tort claim, although Defendants' memorandum did not distinguish between Plaintiff's contract claims and tort claims. Indeed, the contract claims involve only Defendant Techmedica whereas the tort claim involves Defendants Techmedica, Fiebeger and Distin. Third, Defendants argue that Plaintiff's claim of attorneys fees cannot be included in determining the amount in controversy. Plaintiff seeks attorney fees

pursuant to its tort claim. This Court, by order dated October 26, 1989, has granted Plaintiff a right to pursue its attempt to recover reasonable attorneys fees.

## THE CONTRACT CLAIMS

■ Under both applicable case law and the Florida Uniform Commercial Code, contracts may limit damages recoverable for breach of contract, and if such provisions are made, greater compensatory damages may not be awarded. §§ 672.718, 672.719, *Fla.Stat.* (1985); *Lafayette Stabilizer Repair, Inc. v. Machinery Wholesalers Corporation,* 750 F.2d 1290 (5th Cir.1985); *Hi Neighbor Enterprises, Inc. v. Burroughs Corporation,* 492 F.Supp. 823 (N.D.Fla. 1980).

■ Whether the sum stipulated in a contract to be paid in the event of a breach will be considered a penalty or liquidated damages is a question of law for determination by the Court. *Ruckelshaus v. Broward County School Board,* 494 F.2d 1164 (5th Cir.1974); *Pembroke v. Caudill,* 160 Fla. 948, 37 So.2d 538 (1948); *Hutchison v. Tompkins,* 240 So.2d 180 (4th DCA 1970), *rev'd on other grounds,* 259 So.2d 129 (Fla.1972). In determining whether a stipulation for the payment of a fixed sum should be treated as liquidated damages or a penalty, the *Pembroke* court stated the settled law of Florida:

> Where the actual damages contemplated at the time the contract was made are in their nature uncertain ... and the fixed sum stipulated to be paid is not disproportionate to probable injury likely to result from a breach of the contract, effect should be given to the stipulation as one for liquidated damages, without regard to its designation or the amount of injury actually suffered as a result of the breach. *Southern Menhaden Co. v. How,* 71 Fla. 128, 70 So. 1000 (Fla.1916).

*Id.* at 540. *See Hutchison, supra,* 259 So.2d 129 (if damages are not ascertainable on the date of the contract, the clause is for liquidated damages and enforceable); *Berndt v. Bieberstein,* 465 So.2d 1264 (Fla. 2d DCA 1985). AOI has already admitted that damages were not ascertainable on the date of the contract. (Deposition of Wilson p. 121.)

■ Defendants contend that as a matter of law, paragraph 18 of the Distributor Agreement between Techmedica and AOI provides for liquidated damages and not for a penalty. Paragraph 18 provides for liquidated damages equal to the lesser of 5% of gross sales for the preceding 12 months or $50,000.00. Defendants further argue that at the time of the contract, any damages which might reasonably have been expected to flow from a breach of contract were uncertain, conjectural and speculative. Consequently, five percent of gross sales for the preceding twelve months, $6,537.35, is far less than $50,-000.00 and is the ceiling on AOI's damages under the contract claim. Defendants conclude that, as a matter of law, paragraph 18 of the contract provides for liquidated damages and is enforceable. Thus, it is apparent to a legal certainty that Action Orthopedics cannot recover damages of $50,000.00 under the contract claim.

In response, Plaintiff raises the argument that paragraph 18 of the distributor agreement is unconscionable and is a result of grossly unequal bargaining power. Plaintiff fails to explain any factual basis for this contention and likewise fails to put forth any analogous cases. Moreover, unconscionability has not been pleaded. In further support of its attack upon the validity of paragraph 18, Plaintiff asserts that Defendants' reliance upon the limitation of liability provisions of the Florida Uniform Commercial Code and supporting case law is misplaced.

In fact, the opposite is true. Plaintiff's complaint at paragraph 19 avers that this action falls squarely within the Uniform Commercial Code (UCC) as adopted by the state of Florida. Plaintiff can't have it both ways. However, assuming the UCC does not apply to the case at bar, its provisions are properly applied by analogy, should this Court choose. That choice, however, is not necessary because Florida courts have long recognized the validity of liquidated damages provisions—long before that state's legislative enactment of the UCC in 1965.

**1570**

■ Freedom of contract is a basic tenet of the UCC. However, any clause that fixes unreasonably large liquidated damages is void as a penalty. By negative implication, while a clause fixing unreasonably small liquidated damages may be invalid, it is not void as a penalty. In other words, a liquidated damages clause is void as a penalty only in regard to the party required to pay, not the payee. Under a liquidated damages clause, a party entitled to receive an amount representing less than his actual damages cannot assert that the clause operates as a penalty against him.

The Court therefore finds that paragraph 18 of the distributor agreement represents a valid liquidated damages clause, is not a penalty, and fixes damages for the contract claims (Counts I & II) in an amount below this Court's jurisdictional limits.

## THE TORT CLAIM

■ Plaintiff's arguments regarding the alleged unsavory conduct by Defendants are painted with a wide brush. Plaintiff argues a lack of good faith under the contract, bad faith, and tortious conduct on the part of the Defendants. Conversely, Defendants take a narrow view and counter that any conduct must be viewed as arising under the contract and resolved by application of contract. Specifically, Defendants argue that Plaintiff cannot avoid the limitation of liability clause by suing in tort, and Plaintiff has alleged no cause of action in tort. Defendants rely on *Orkin Extermination Co. of South Florida v. Clark*, 253 So.2d 884 (Fla. 3d DCA 1971). Defendants' reliance is misplaced. *Clark* can be readily distinguished from the case at bar. *Clark* involved a breach of a contract to spray a home infested with bugs. The *Clark* court found that the only duty owed to the homeowner was based on contract and no independent duty in tort was owed. Because the breach resulted from negligent conduct under the contract, the *Clark* court held that an attempt to bring suit in tort did not permit the plaintiff to avoid a limitation of liability clause in the contract. A very different case is presented here. Namely, Plaintiff alleges an intentional tort, not negligence.

In *Serina v. Albertson's, Inc.*, 744 F.Supp. 1113 (M.D.Fla.1990), this Court very recently discussed in a comprehensive and detailed manner whether facts which constitute a breach of contract may give rise to tort liability. In *Serina*, the Plaintiff brought an action in tort for fraud, requesting punitive damages against the Defendant and a motion for summary judgment was filed alleging the cause of action was in contract, not tort and that the conduct used to establish breach of contract could not be the same which would serve as a basis for any tort action:

The idea of a 'tort independent of the breach of contract' is found predominantly in Florida decisions dealing with punitive damages and breach of contract claims. While the Court realizes the issue here is not punitive damages, the rules of law established in the punitive damages and breach of contract cases are relied upon by the Defendant.

The general rule in Florida is that punitive damages are not recoverable for a breach of contract claim unless, '*the acts constituting a breach of contract also amount to a cause of action in tort ...*' *Lewis v. Guthartz*, 428 So.2d 222, 223 (Fla.1982), *citing Griffith v. Shamrock Village*, 94 So.2d 854, 858 (Fla.1957) (emphasis added). The Second District Court of Appeal of Florida also stated, '*... we will not sustain an award of punitive damages for the breach of a contract save in the circumstances where the conduct producing the breach is itself endowed with the characteristics of an independent, actionable tort.*' *Lake Placid Holding Co. v. Paparone*, 508 So.2d 372, 376 (Fla. 2d DCA 1987), *citing Porter v. Wilson, Walch, Fortner, Robinson & Besse*, 384 So.2d 190 (Fla. 2d DCA 1980) (emphasis added).

. . . . .

[T]his Court must disagree with the Defendant that the requisite separate and independent tort must arise out of separate conduct from that which led to the breach of contract. It appears that the independent tort can be derived from the same conduct which led to the breach

of contract, as long as the elements necessary to prove that independent tort are alleged and proven, and as long as one is utilizing breach of contract and punitive damages principles ...

*Serina,* 744 F.Supp. at 1115, 1116.

In discussion, and as a case of first impression in this circuit, as to the "economic loss value" as it relates to a fraud claim, an intentional tort, this Court stated:

*Florida Power & Light Co. v. Westinghouse Electric Corp.,* 785 F.2d 952 (11th Cir.1986), dealt comprehensively with the 'economic loss rule' in Florida. In *Florida Power,* the plaintiff brought claims for breach of express warranties and negligence when defendant allegedly supplied plaintiff with defective goods. *Id.* at 953. The 11th Circuit felt there was no clear and controlling precedent in Florida regarding economic loss claims brought in tort without accompanying property damages or physical injury and certified two questions to be answered by the Supreme Court of Florida. These two questions were:

(1) Whether Florida law permits a buyer under a contract for goods to recover economic losses in tort without a claim for personal injury or property damage to property other than the allegedly defective goods.

(2) If Florida law precludes recovery for economic loss in tort without a claim for personal injury or property damage to other property, whether this rule should be applied retroactively in this case. *Id.* at 953.

The first question ... was answered in the negative by the Supreme Court of Florida in *Florida Power & Light Co. v. Westinghouse Electric Corp.,* 510 So.2d 899 (Fla.1987). The Florida Supreme Court decided to follow the 'majority view that contract principles are more appropriate than tort principles to resolve purely economic claims.' *Id.* at 900. Subsequently, the 11th Circuit affirmed the trial court's granting of partial summary judgment in favor of defendant on the negligence claim in *Florida Power & Light Co. v. Westinghouse Electric Corp.,* 835 F.2d 817 (11th Cir. 1988). The 'economic loss rule' of disallowing tort actions for recovery of economic damages without accompanying physical injury or property damage was also followed in a case involving a contract for services. *See AFM Corp. v. Southern Bell Tel. & Tel.,* 515 So.2d 180 (Fla.1987).

*Id.* at 1115, 1116.

.  .  .  .  .

The torts of negligence and fraud are distinct torts with distinct elements. However, there is simply no basis presented or found for disparate treatment of fraud and negligence within the 'economic loss rule'. Furthermore, the Court finds the holding in *Public Service Enterprise Group [Inc., v. Philadelphia Electric Co.,* 722 F.Supp. 184 (D.N.J. 1989) ], to be persuasive when the District Court of New Jersey refused to make an exception for fraud in the 'economic loss rule' when the facts surrounding the tort claim are interwoven with the facts surrounding the breach of contract claim.

.  .  .  .  .

Therefore, the Court chooses to disagree with Defendant's analysis with regards to the conduct issue, but agrees with Defendant on its analysis of the damage issue. The Court acknowledges this may sound contradictory but reconciles its holding by theorizing that the rules of law established in the breach of contract and punitive damages cases, with respect to a tort independent of the breach of contract issue, may be proscribed by the 'economic loss rule'.

Simply stated, one may be able to bring an action for punitive damages in a breach of contract case when the facts surrounding the breach of contract and the separate and distinct tort are interlaced, but may be precluded from bringing a *separate tort action* under the same scenario by the "economic loss rule".

*Serina,* 744 F.Supp. at 1118.

The present case differs from *Serina* in one very important respect. In *Serina,* both the contract claim and tort claim involved the same parties, i.e., the same

plaintiff and same defendant. However, the tort claim in the present action involves not only the defendant named in both the contract claims, but also additional defendants. To particularize, the contract claims involve only Defendant Techmedica, whereas the tort claim involves Defendant Techmedica and Defendants Distin and Fiebiger. An application of this Court's holding in *Serina*, therefore, does not preclude the separate tort action brought in the case at bar. The facts surrounding the breach of contract and the separate and distinct tort are not interlaced and do not fall within the parameters of *Serina*.

## ATTORNEY FEES

■ Defendants maintain that only attorney fees recoverable under statute or contract may be included in determining the amount in controversy, and cites *Premier Industrial Corp. v. Texas Industrial Fastener Co.*, 450 F.2d 444 (5th Cir.1971), and *Graham v. Henegar*, 640 F.2d 732 (5th Cir.1981). In response, Plaintiff counters that nothing in *Premier* or *Graham* precludes determination of amount in controversy by including common law attorney fees. The Court agrees with Plaintiff that neither case stands for the proposition that *only* attorney fees recoverable under statute or contract may be included.

■ Generally, attorney fees may not be included in determining the amount in controversy in a diversity action. However, one court in this circuit has held that if allowable by local law, attorney fees *may* be included in determining jurisdictional amounts in diversity. *Hall v. Travelers Insurance Co.*, 691 F.Supp. 1406 (N.D.Ga. 1988). Accord, *Miller & Miller Auctioneers, Inc. v. Mersch*, 442 F.Supp. 570 (D.C. Okl.1977) (attorney fees in diversity are determined in accordance with laws of state in which federal court is situated).

The Florida Supreme Court discussed the ability of a litigant to recover attorney fees from his adversary in *Florida Patient's Compensation Fund v. Rowe*, 472 So.2d 1145 (Fla.1985). While *Rowe* deals specifically with the constitutionality of a statute awarding reasonable attorney fees to the prevailing party in a medical malpractice action, Justice Overton's opinion did provide an overview of a litigant's ability to recover under Florida law. In so doing, *Rowe* served to reaffirm Florida's adherence to the "American Rule," that attorney fees may be awarded by a court only when such an award is authorized by statute or by agreement of the parties. However, the *Rowe* court expressly noted its recognition of a limited exception to the "American Rule" where there is inequitable conduct on the part of a litigant. *Rowe*, 472 So.2d 1145, 1148 [citing Wahl, *Attorney's (sic) Fees Taxed Against a Party Because of His (sic) Inequitable Conduct*, 26 Fla.L.J. 281 (1952); Wahl, *Attorneys' (sic) Fees Taxed Against Opposing Party*, 37 Fla. B.J. 220 (1963)]. Additionally, under Florida law, there is at least some decisional precedent that if the party seeking attorney fees can demonstrate the specific, certain and conclusive existence of malice or fraud, attorney fees are available. *Cook v. Deltona*, 753 F.2d 1552, 1564 (11th Cir. 1985) (citing *Baya v. Central & Southern Florida Flood Control District*, 184 So.2d 501, 502 (Fla. 2d DCA 1966). While recognizing the ability to do so, neither the *Cook* court nor the *Baya* court actually awarded attorney fees.

This Court notes specifically that the *Rowe* court cites to authority which utilizes the term "taxed" in describing an award of attorney fees where inequitable conduct is involved. As such, this Court finds that any award of common law attorney fees properly "taxed" under the exception expressed in *Rowe* constitutes "costs" which fall outside a determination of amount in controversy. Moreover, absent a finding that attorney fees awarded under Florida law constitute "costs," this Court is not persuaded that existing authority paves the way for inclusion of attorney fees in a determination of amount in controversy. In so deciding, this Court is mindful of the intent of Congress in raising the amount in controversy requirement. Any contrary ruling by this Court would do violence to the result intended by Congress when it substantially raised the amount in controversy requirement.

It should be noted, however, that this holding does not upset this court's order

granting the Plaintiff an opportunity to pursue its common law remedy for attorney fees.

The Court finds that Plaintiff has satisfied the amount in controversy requirement. Accordingly, it is

ORDERED that Defendants' motion to dismiss be denied.

DONE and ORDERED.