**Michael J. ROGUZ, Plaintiff,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, Defendant.**

**No. 94–1164–CIV–T–17E.**

United States District Court, M.D. Florida, Tampa Division.

Oct. 24, 1995.

Walter O. Hobbs, II, Harry M. Hobbs, P.A., Tampa, FL, for plaintiff.

Anthony K. Black, Black & Jung, P.A., Tampa, FL, Robert C. Von Ohlen, Jr., J. Peter Martin, Adler, Kaplan & Begy, Chicago, IL, for defendant.

### ORDER ON MOTION FOR RECONSIDERATION

KOVACHEVICH, District Judge.

This cause is before the Court on Defendant, GENERAL AMERICAN LIFE INSURANCE COMPANY's (General American), Motion for Reconsideration (Docket No. 32) filed on June 30, 1995, and Plaintiff, MICHAEL J. ROGUZ's (Roguz), motion to strike the same or in the alternative response thereto (Docket No. 33) filed on July 13, 1995.

#### FACTS

On January 12, 1987, the Plaintiff, Roguz, who was employed by the Army and Air Force Exchange Service ("AAFES"), en-

rolled in his employer's group accident insurance plan. The plan covered both Roguz and his wife, Elisabeth. AAFES offered the plan through the Defendant, General American. Initially, policy premiums were deducted from Roguz's paycheck. Upon retirement from AAFES in January 1992, Roguz submitted semi-annual premium payments to Professional Association Services, Inc. ("PAS"), General American's agent for collection of premiums. Shortly after his retirement, Roguz moved from Irving, Texas to Sun City Center, Florida in August 1992.

Roguz timely submitted premium payments for the periods July 1—December 31, 1992, January 1—June 30, 1993, and January 1—June 30, 1994. He did not submit a timely payment for the period July 1—December 31, 1993. However, Roguz attempted to tender payment for that period on December 23, 1993. This payment was returned to Roguz with a letter from PAS explaining that the time period for payment had expired.

Roguz's wife, Elisabeth, died in a tour bus accident in England in November 1993, prior to Roguz's submission of a premium on December 23, 1993. After PAS refused to accept Roguz's premium payment for the period July 1—December 31, 1993, Roguz nonetheless filed a claim for accidental death benefits for his wife's death. The Defendant, General American, refused to honor the claim, stating that there was no insurance coverage for that period due to nonpayment of the premium. Roguz subsequently instituted this suit.

## DISCUSSION

■ Upon consideration, the Court denies Plaintiff's Motion to Strike Defendant's Motion for Reconsideration. Defendant's motion is not a "second motion for summary judgment" but is, in fact, a motion for reconsideration as it raises new factual issues and clarifies others. Accordingly, the merits of Defendant's motion will be heard by this Court.

■ As stated, a motion for reconsideration should raise new issues, not merely re-address issues previously litigated. *Government Personnel Services, Inc. v. Government Personnel Life Insurance Co.,* 759 F.Supp. 792, 793 (M.D.Fla.1991). To meet this standard, the moving party must demonstrate why the court should reconsider its prior decision by presenting "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Cover v. Wal–Mart Stores, Inc.,* 148 F.R.D. 294, 295 (M.D.Fla.1993).

■ In support of its motion Defendant contends that the conversion privilege does not apply to plaintiff because he remained, at all times, an eligible insured under the master policy. Specifically, pursuant to Section 1 paragraph 4 of the policy, the Plaintiff was a Class 1 eligible insured while he was a full-time employee of AAFES. Upon retirement, pursuant to the same policy section, the Plaintiff became a Class III eligible insured rather than an uninsured person eligible only for enrollment in a "converted policy." Accordingly, the Defendant contends that the policy language governing this dispute must be found in the master policy and the plaintiff's certificate of insurance, not any possible "converted policy" considered by this Court in its prior order. Due to this alleged mistake of fact, the Defendant contends that summary judgment is proper because there is no longer a genuine issue as to which policy language governs this dispute. The Court disagrees and Defendant's motion for reconsideration is denied.

Having reviewed the parties' memoranda, the Court re-states its previous finding that summary judgment is improper in the case at bar. In its prior order, the Court recognized the question concerning which policy language controls this dispute as but one of the many genuine issues of material fact present in this case. Consequently, even if the Court were to adopt the defendant's well-reasoned argument that the master policy and plaintiff's certificate of insurance are the controlling documents in this case, summary judgment would still be improper because other genuine issues of material fact remain unresolved.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A motion for summary judgment should only be granted where the moving party has sustained its burden of showing that there is no genuine issue of material fact in dispute, viewing all the evidence in the light most favorable to the non-moving party. *Sweat v. The Miller Brewing Co.*, 708 F.2d. 655 (11th Cir.1983). As previously stated, that standard has not been met since genuine issues of material fact remain unresolved.

Specifically, even if the Court adopted defendant's argument that the master policy governs this dispute, defendant has failed to establish that the policy language governing time of payment including the "inadvertent error excuse" does not apply to Plaintiff. In its motion Defendant urges the Court to conclude that because there is no conversion policy, there is no genuine issue as to whether the "inadvertent error excuse" applies to Plaintiff. Defendant relies on this Court's statement in its prior order that "the provisions in the master policy and the Plaintiff's certificate of insurance excusing inadvertent non-payment apply only to AAFES, and not to individual insureds." (Order p. 4) However, that statement was made exclusively with regard to the situation in which "AAFES is responsible for payment of *both* bi-weekly premiums for active employees and semi-annual premiums for retirees." (See Order p. 4) It appears from the parties' memoranda that in this case, the retiree was responsible for making the premium payment himself.

The Court then considered the possibility that a "converted policy" may control the dispute given the situation where the retiree is responsible for making payment. However, even if the Court adopted Defendant's position that no such "converted policy" exists and that the language of the master policy controls, there remains a genuine issue as to whether the "inadvertent error excuse" found in the master policy also applies to the plaintiff in this case when he is responsible for making premium payments himself. This point is evidenced by the relevant policy language. Section 5, paragraph 6 of the master policy which is entitled "Effective and Termination dates of individual insurance" reads in relevant part as follows:

> If premium for this policy is contributory; ... Insurance for such Persons shall terminate at 12:01 a.m. on the next premium due date immediately following the first to occur of: 1) the date the person ceases to be an eligible person; 2) the date the person withdraws premium contribution authority; or 3) the date you fail to pay, except for inadvertent error, the required premium.

This language indicates that the inadvertent error excuse may also apply to those insured's who are paying contributory premiums. If it does not apply to person's paying contributory premiums then there is no language in this provision or anywhere in the policy which states that the person's insurance will terminate if "the person" fails to pay the premium. In fact, there would be no language in the policy at all which creates an obligation on the part of the individual insured to pay the premiums in order to enjoy coverage. Common sense dictates that the word "you" in this provision may apply to insureds who pay or contribute to the payment of their own premiums. However, the policy language at Section 1 paragraph 1 of the policy makes clear that the policyholder is AAFES and that the term "you" throughout the policy indeed refers to the policyholder. Thus, there is a genuine issue as to whether there is some other contract or agreement which embodies the Plaintiff's obligation to pay the premium or whether the policy language quoted above can be extended to cover the Plaintiff when he adopts the obligation to pay the premiums himself, in whole or in part.

Additionally, the Defendant has failed to establish that the Plaintiff's premium payment was non-contributory. The parties agree that the Plaintiff paid $117.00 semi-annually to PAD, General American's premium collection agent. However, it is unclear whether that $117.00 covered the full premium payment due or whether that payment was contributory in that AAFES paid part of the full amount due. This distinction is crucial because Section 5, paragraph 6 of the

policy allows for a six (6) month grace period for non-payment of a premium during which the insurance coverage does not terminate if the premium is contributory. Alternatively, if the premium is non-contributory Section 5 paragraph 6 provides that there is no grace period and the insurance coverage lapses on the day after the premium was due and unpaid.

If the Plaintiff's premium is determined to be contributory, then pursuant to Section 5, paragraph 6 of the policy, there existed a six (6) month grace period from July 1, 1993, the premium due date. Because the next premium was not due until January 1, 1994, the Plaintiff would have enjoyed coverage at least until 12:01 a.m. on that day. Because the Plaintiff's wife died November 10, 1993, during the grace period, the Plaintiff should not be precluded from collecting accidental death benefits based on his wife's death. Alternatively, if the Plaintiff's premium is determined to be non-contributory, coverage would have lapsed at 12:01 July 2, because the succeeding payment due date was July 1, 1993.

Based on the foregoing discussion, this Court finds that genuine issues of material fact exist as to whether the inadvertent error excuse found in the master policy applies to Plaintiff, whether Plaintiff's premium was contributory or non-contributory and whether a six (6) month grace period existed from July 1, 1993, until January 1, 1994.

## CONCLUSION

**ORDERED** that the Defendant's Motion for Reconsideration of the Court's June 13, 1995 order be **DENIED** and the Plaintiff's Motion to Strike Defendant's Motion for Reconsideration be **DENIED.**

**DONE** and **ORDERED.**