[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-11321

_____

D.C. Case No. 98-786-CIV-SH

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 19 2000
THOMAS K. KAHN
CLERK

HIH MARINE SERVICES, INC.,

Plaintiff-Counter-
Defendant-Appellee,

versus

RODGER FRASER, M.D., d.b.a.
SHALOM  ENTERPRISES, LIMITED,

Defendants-Counter-
Claimants-Appellants.

_____

Appeal from the United States District Court,
for the Southern District of Florida

_____

**(May 19, 2000)**

Before ANDERSON, Chief Judge, CARNES, Circuit Judge, and OAKES*, Circuit
Judge.
_____
*Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by
designation.

OAKES, Senior Circuit Judge:

Roger Fraser and Shalom Enterprises, Ltd. (collectively "appellants") appeal the district court's award of summary judgment to HIH Marine Services, Inc. ("HIH") in this marine insurance case. The appellants contend that the district court erred in its choice of law analysis and in its conclusion that the policy issued by HIH was void ab initio. Because we find that the district court was correct in holding that material misrepresentations voided any possible coverage available to the appellants, we affirm the decision below.

BACKGROUND

Fraser, doing business as Shalom Enterprises, owned a private recreational yacht called the Netan-El that he anchored in Jamaica. In January 1998, Fraser entered into discussions with Mobay Underseas Tours, Ltd. ("Mobay")[1] regarding the chartering of the Netan-El for sightseeing tours in Montego Bay. These discussions envisioned an arrangement where Mobay assumed custody and control of the Netan-El to use her as a charter vessel in return for 15 per cent of the gross earnings of the charter operation. In anticipation of the operation, Mobay agreed to draft a proposed charter agreement and procure the appropriate marine insurance.

---

[1]Mobay's principal, Christopher Roberts, was originally a party to this case, but was voluntarily dismissed by HIH prior to any appearance in the action.

Mobay, working through a Miami insurance broker, had previously obtained marine insurance from HIH on another vessel. Mobay contacted the Miami broker and requested that HIH issue an endorsement to Mobay's pre-existing policy adding the Netan-El as an additional insured vessel. Although HIH was asked to cover the risk associated with a charter boat under the custody and control of Mobay, no chartering agreement between Mobay and the appellants was in effect at the time and Mobay did not have custody of the Netan-El. On February 2, 1998, HIH bound the requested coverage by an endorsement to Mobay's policy.

The Netan-El endorsement did not include Shalom as a named insured for hull coverage. When this was brought to HIH's attention, HIH agreed to add Shalom to the endorsement. A revised endorsement was forwarded to HIH for formal execution, but was not acted upon immediately because of the press of other business. Throughout this period, HIH expressly refused to issue the appellants a separate policy for the Netan-El.

During this same time in early February, Fraser informed Mobay that he was negotiating with a prospective purchaser of the Netan-El and that if the sale occurred, he would not enter into the proposed chartering agreement with Mobay. On February 12, 1998, a fire broke out on the Netan-El and the vessel was totally destroyed. At the time of the fire, no final charter agreement was in place between

3

the appellants and Mobay, and Mobay did not have custody of the vessel. Additionally, HIH had not executed a revised endorsement adding Shalom as a named insured.

In early April, HIH denied the appellants' hull claim on the ground that coverage was bound on the condition that Mobay had assumed custody of the Netan-El pursuant to an operative charter agreement. HIH then brought the instant action in district court, seeking, <u>inter alia</u>, a declaration that the endorsement adding the Netan-El to Mobay's policy was void because of misrepresentations of material facts in the insurance application. The appellants counterclaimed, alleging that HIH knew of Shalom's ownership of the vessel and had agreed to issue an endorsement adding Shalom as a named insured, but had not done so because of a workload delay.

After the close of discovery, both parties moved for summary judgment. On April 22, 1999, the district court entered summary judgment in favor of HIH on the grounds that the Netan-El endorsement was void <u>ab initio</u>. This appeal followed.

DISCUSSION

The appellants raise four challenges to the district court's decision. First, they argue that the district court erred in its choice of law analysis and its conclusion that United States, as opposed to Jamaican, law applied.

4

Second, they contest the holding that Shalom was not a named insured and that Mobay had no insurable interest in the Netan-El. Third, they argue that the district court was wrong to find that material misrepresentations were made in Mobay's application for insurance. Finally, the appellants contend that waiver and estoppel should apply to HIH's claims. As required for a grant of summary judgment, we review the district court's decision <u>de</u> <u>novo</u>. <u>See</u> <u>SCI Liquidating Corp. v. Hartford Fire Ins. Co.</u>, 181 F.3d 1210, 1212 (11th Cir. 1999).

With respect to the district court's choice of law analysis, the appellants admit in their reply brief that "the choice of law issue is largely academic, since Jamaican and American admiralty law are fully congruent in a number of respects." We agree with the appellants that the application of Jamaican law would have no substantive impact on the outcome of this case, and therefore decline to address the district court's conclusion that United States law applies.

With respect to the appellants' remaining arguments, we focus on the issue of material misrepresentation because a finding of material misrepresentation in this marine insurance case voids the policy and renders immaterial the appellants' arguments on insurable interest and waiver and estoppel.[2] The district court found

---

[2] If the policy is voided, the question of whether an insurable interest existed is moot. Additionally, "**uberrimae** **fidei** does not permit the use of the principles of waiver and estoppel to provide coverage where there has been a material misrepresentation on the application." **Certain Underwriters v. Giroire, 27 F. Supp.2d 1306, 1310 (S.D. Fla. 1998).**

that Mobay's failure to inform HIH that its chartering contract with the appellants was unexecuted and that Mobay did not have possession of the Netan-El were material misrepresentations that voided the policy under the doctrine of <u>uberrimae fidei</u>.

It is well-settled that the marine insurance doctrine of <u>uberrimae fidei</u> is the controlling law of this circuit. See <u>Steelmet, Inc. v. Caribe Towing Corp.</u>, 747 F.2d 689, 695 (11th Cir. 1984)[3]; <u>Certain Underwriters</u>, 27 F. Supp.2d at 1312; <u>International Ship Repair and Marine Serv., Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 922 F. Supp. 577, 580 (M.D. Fla. 1996). <u>Uberrimae fidei</u> requires that an insured fully and voluntarily disclose to the insurer all facts material to a calculation of the insurance risk. See <u>Steelmet</u>, 747 F.2d at 695; <u>see also</u> <u>Fireman's Fund Ins. Co. v. Wilburn Boat Co.</u>, 300 F.2d 631, 646 (5th Cir. 1962) (discussing the duty to disclose in marine insurance law); G. Gilmore & C. Black, <u>The Law of Admiralty</u> 62 (2d ed. 1975) ("[T]he highest degree of good faith is exacted of those entering [a marine insurance contract], for the underwriter often has no practicable means of checking on either the accuracy or the sufficiency of the facts furnished him by the

---

[3]<u>Steelmet</u> raised the question whether the general rule of **uberrimae fidei** applied to protective and indemnity policies as well as to hull policies. See 747 F.2d at 695. This court ultimately found it unnecessary to decide that issue. See **Steelmet, Inc. v. Caribe Towing Corp.**, 842 F.2d 1237, 1241 n.3 (11th Cir. 1988). Because the coverage applicable to the defendants in this case was hull coverage only, however, there is no question that <u>uberrimae fidei</u> applies here.

assured before the risk is accepted and the premium and conditions set."). The duty to disclose extends to those material facts not directly inquired into by the insurer. See Jackson v. Leads Diamond Corp., 767 F. Supp. 268, 271 (S.D. Fla. 1991); see also Cigna Property & Cas. Ins., Co. v. Polaris Pictures Corp., 159 F.3d 412, 420 (9th Cir. 1998) ("Whether or not asked, an applicant for marine insurance is bound to reveal every fact within his knowledge that is material to the risk.").

Under uberrimae fidei, a material misrepresentation on an application for marine insurance is grounds for voiding the policy. See Steelmet, 747 F.2d at 695 (a misrepresentation, even if it is a result of "mistake, accident, or forgetfulness, is attended with the rigorous consequences that the policy never attaches and is void" (quoting Wilburn Boat Co., 300 F.2d at 646)). A misrepresentation is material if "it might have a bearing on the risk to be assumed by the insurer." Northfield Ins. Co. v. Barlow, 983 F. Supp. 1376, 1380 (N.D. Fla. 1997); see also Kilpatrick Marine Piling v. Fireman's Fund Ins. Co., 795 F.2d 940, 942-43 (11th Cir. 1986) (materiality is "that which could possibly influence the mind of a prudent and intelligent insurer in determining whether he would accept the risk").

Here, the district court found that HIH issued the Netan-El endorsement to insure a charter vessel that HIH assumed was in Mobay's custody pursuant to a charter agreement. The district court also found that the lack of an executed

7

charter agreement and Mobay's failure to take custody of the vessel were material facts of which HIH should have been informed, especially in light of HIH's refusal to insure the Netan-El as a private vessel in the appellants' name. The district court therefore concluded that Mobay's failure to inform HIH of these facts was a material misrepresentation that voided the policy.

The appellants argue that HIH knew that the appellants owned the Netan-El and, because of that knowledge, were responsible for requesting a copy of the charter agreement or seeking information about the chartering operation from Mobay. HIH's failure to do so, the appellants contend, resulted in a waiver of that information. The central principle of uberrimae fidei, however, is that the insured bears the burden of full and voluntary disclosure of facts material to the decision to insure. This duty to disclose is based on the rationale that requiring the marine insurer to investigate each and every claim made by those applying for coverage "would be both time consuming and expensive." Northfield Ins. Co., 983 F. Supp. at 1383. Instead, the law has placed the burden of good faith disclosure with the person in the best position to know all the facts: the insured. Id. The appellants' argument that HIH had an obligation to investigate in this case is therefore without merit.

Additionally, the appellants assert that HIH's assumption that the endorsement was for a charter vessel in Mobay's possession under a finalized charter agreement was a "subjective and secret" limitation on the policy of which the appellants were unaware. As with the appellants' first argument, this contention contradicts the disclosure obligations imposed under uberrimae fidei. HIH issued the Netan-El endorsement to an existing commercial charter policy held by Mobay and specifically refused separate private vessel coverage to the appellants. Under such circumstances, we cannot agree that HIH had secretive assumptions that the Netan-El was in Mobay's custody under an executed charter agreement; rather, we find that HIH was entitled to know such facts in order to assess the coverage risk, and that the appellants were required to disclose the information.

Finally, the appellants contend that Mobay's lack of custody and the status of the charter agreement were not material facts because the Netan-El represented less of an insurance risk to HIH as a private vessel than as the commercial charter vessel for which HIH was willing to issue coverage. As discussed above, materiality in the marine insurance context is broadly defined as anything that could influence the insurer's evaluation of the risk presented by the insured. See Northfield Ins. Co., 983 F. Supp. at 1380. As the insurer, HIH had the right to

assess the risk using accurate information on the identity of its insured and the use of the vessel. The record establishes that HIH was willing to risk insuring Mobay, an existing commercial policyholder, in a professional charter operation, but unwilling to insure the appellants for a private recreational vessel. Mobay's failure to disclose that it did not have custody of the Netan-El and that no charter agreement had been finalized were therefore material to HIH's insurance decision. The appellants' opinion that the Netan-El was at less risk as a private vessel than as a charter vessel is simply irrelevant to the materiality analysis and, we might add, possibly wrong, especially given the vessel's location in the Caribbean.

Because the appellants have offered no argument requiring a different conclusion, we agree with the district court that Mobay made material misrepresentations to HIH in obtaining the Netan-El endorsement that voided the policy ab initio. As indicated above, this finding makes it unnecessary to consider the appellants' arguments on insurable interest and waiver and estoppel. We therefore AFFIRM the decision of the district court granting summary judgment to HIH on all counts.

AFFIRMED.

ANDERSON, Chief Judge, dissenting:

In my judgment, there is a genuine issue of fact as to whether or not there was a misrepresentation.  Accordingly, I respectfully dissent.